IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

DOUGLAS B. HANSON, individually
as the surviving spouse of
Sharon M. Hanson, deceased, and
in his capacity as the duly
appointed Executor of the
Estate of Sharon M. Hanson,

    Plaintiff,

       v.                CV 216-034

COLGATE-PALMOLIVE COMPANY,

    Defendant.

------------

**O R D E R**

------------

Before the Court are the following motions: (1) Defendant's
motion for partial summary judgment (Doc. 74), (2) Defendant's
motion for summary judgment (Doc. 87), and (3) Defendant's motion
for oral argument on the above motions (Doc. 129). For the reasons
set forth herein, (1) Defendant's motion for partial summary
judgment is **GRANTED**; (2) Defendant's motion for summary judgment
is **GRANTED**; and (3) Defendant's motion for oral argument is **DENIED**.

## I. BACKGROUND

### A. Sharon M. Hanson

Sharon M. Hanson ("Ms. Hanson") was a loyal customer of Colgate-Palmolive Company's ("Defendant") talcum powder, Cashmere Bouquet. (See S. Hanson Dep. Volume ("Vol.") I, Doc. 148-55, at 93, 94, 104; S. Hanson Video Dep., Doc. 148-56, at 31.) Ms. Hanson inherited the practice of using Cashmere Bouquet from her mother. (S. Hanson Dep. Vol. I at 103-04.) In 1961, at nine years old, Ms. Hanson began using the talc product. (Id. at 93-94, 104.) She continued using Cashmere Bouquet until 1973. (Id. at 105.) Ms. Hanson explained that the Cashmere Bouquet was a powdery substance that created dust clouds when transferred or applied. (S. Hanson Video Dep. at 16-18, 20-21.)

In 2008, while working as a fitness instructor, Ms. Hanson began to experience pain in her chest while breathing. (Id. at 45.) Ms. Hanson was ultimately referred to the Mayo Clinic, and, following tests, she was initially diagnosed with mesothelioma in 2009. (Id. at 47; Def.'s Mot. for Summ. J., Ex. 7, Doc. 90-6.) Upon being diagnosed with mesothelioma, Ms. Hanson sought treatment at the MD Anderson Cancer Center in Houston, Texas ("MD Anderson"). (S. Hanson Video Dep. at 48.) While under the care of MD Anderson, Ms. Hanson's diagnosis changed from mesothelioma to ovarian cancer. (S. Hanson Video Dep. at 49; Def.'s Mot. for Summ. J., Ex. 8, Doc. 90-7, at 1.) In 2014, doctors at MD Anderson later determined that Ms. Hanson did, in fact, have mesothelioma

in addition to ovarian cancer. (S. Hanson Video Dep. at 59.) On April 21, 2018, Ms. Hanson passed away. (Am. Compl., Doc. 200, ¶ 5.)

## B. Cashmere Bouquet

Both Parties offer voluminous evidence attempting to prove and disprove the presence of asbestos in Cashmere Bouquet. (See generally Def.'s Mot. for Summ. J., Doc. 87; Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., Doc. 153.) The Parties dispute the presence of asbestos in talcum powder, generally. However, the Parties agree that Cashmere Bouquet originates from talc mines in Italy, North Carolina, and Montana but dispute whether those mines are contaminated with asbestos. Finally, there is a dispute regarding the presence and level of asbestos in Cashmere Bouquet. In support of their positions, the Parties offer various private and government studies and expert reports and testimony. Additional important facts, however, are undisputed.

First, it is undisputed that asbestos is not an intended ingredient of Cashmere Bouquet. Second, a review of the record shows that no study, test, or expert can opine as to whether the Cashmere Bouquet to which Ms. Hanson was exposed contains asbestos. Third, if Ms. Hanson's Cashmere Bouquet did contain asbestos, it is undisputed that no study, test, or expert can opine as to the quantity of asbestos contained in Ms. Hanson's Cashmere Bouquet.

## C. Procedural History

Ms. Hanson and Douglas B. Hanson (collectively, "Plaintiffs") initiated the present action against Colgate-Palmolive and other defendants on March 7, 2016. (See generally Compl., Doc. 1.) Colgate-Palmolive is the only remaining defendant. (See Am. Compl.) Plaintiffs' initial complaint contained several substantive causes of action against Defendant including negligence, product liability negligence, breach of warranty, and loss of consortium.[1] (Compl., ¶¶ 25-59.) Plaintiffs also claimed punitive damages. (Id., ¶¶ 60-61.)

On September 15, 2017, Defendant moved for summary judgment on each of Plaintiffs' substantive claims on causation grounds and for partial summary judgment on Plaintiffs' claim for punitive damages. (Def.'s Mot. for Summ. J.; Def.'s Mot. for Partial Summ. J., Doc. 74.) The Parties also filed numerous Daubert motions seeking to exclude the testimony of each other's expert witnesses. On September 24, 2018, the Court entered its Order ruling on each of the pending expert motions. (Order, Doc. 201.) Notably, the Court excluded the opinions of Plaintiffs' experts Dr. Ronald Gordon, Ph.D.; Dr. Richard Kradin, M.D.; Dr. Jacqueline Moline,

---

[1] At the time the complaint was filed, it named both Ms. Hanson and Mr. Hanson as plaintiffs. (Compl.)

M.D.; and Dr. James Webber, Ph.D.; each of whom were Plaintiffs' designated experts on the issue of causation. (Id.)

Following Ms. Hanson's passing, the Court granted Mr. Hanson's (hereinafter, "Plaintiff") consent motion to substitute party plaintiff and for leave to file an amended complaint. (Order, Doc. 199.) Plaintiff's Amended Complaint maintained the claims contained in the initial complaint and added an additional cause of action, wrongful death. (Am. Compl., ¶¶ 26–66.) As with the other substantive claims, the wrongful death claim is premised upon asbestos contamination of Cashmere Bouquet and exposure to Cashmere Bouquet causing Ms. Hanson's cancer.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1996). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four

Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 323. When the movant does not carry the burden of proof at trial, it may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606–08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp., 477 U.S. 317). The movant cannot meet its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id.

If—and only if—the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence

6

affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033–34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court gave Plaintiff notice of the motions for summary judgment and informed him of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 130, 131.) Thus, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

## B. Discussion

Defendant's motion for summary judgment contends that summary judgment is proper because there is no evidence in the record that (1) the talcum powder that Ms. Hanson used contained asbestos and (2) even assuming some of the talcum powder Ms. Hanson used contained asbestos, there is no evidence as to Plaintiff's level of exposure to that asbestos. Defendant's motion, therefore, asserts that Plaintiff's claims fail on the issue of causation as a matter of law.[2] For the reasons set forth below, the Court agrees.[3]

### 1. Causation

Plaintiff alleges several causes of action against Defendant; each one premised upon Ms. Hanson's alleged exposure to asbestos.

---

[2] Defendant requests oral argument on its summary judgment motions presently before the Court. (Doc. 129.) Upon consideration of the issues presented and the Parties' submissions, the Court finds that the matters considered in this Order have been sufficiently explored in the Parties' filings and that oral argument would not materially aid the Court in resolving the pending motions.

[3] In its motion for summary judgment, Defendant argues that even assuming admission of Plaintiff's experts, no genuine issue of material facts exists as to causation. (See Def.'s Mot. for Summ. J., at 18–21, 22–24.) The Court agrees, and this Order assumes the admission of Plaintiff's experts' opinions. However, in an Order dated September 24, 2018, four of Plaintiff's causation experts were excluded under Daubert. (Doc. 201.) McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1237 (11th Cir. 2005) (noting that proof of causation in toxic tort cases requires expert testimony); Butler v. Union Carbide Corp., 712 S.E.2d 537, 544 (Ga. Ct. App. 2011) ("Causation is an essential element of a toxic tort case, and proof of causation in such cases, 'generally requires reliable expert testimony.' Absent reliable expert testimony that exposure to a [defendant's] product contributed to the development of [plaintiff's] mesothelioma, there is insufficient evidence to create a jury issue as to causation.") (internal citations omitted). Even assuming Plaintiff's expert testimony was sufficient to create an issue of fact regarding asbestos in Ms. Hanson's Cashmere Bouquet and the level of her exposure

Defendant's summary judgment motion contends that Plaintiff cannot prove causation, required for each claim, as a matter of law. In an asbestos action, "causation is an essential element." Butler v. Union Carbide Corp., 712 S.E.2d 537, 544 (Ga. Ct. App. 2011). For claims involving toxic exposure, including asbestos, causation is broken down into two types: general causation and specific causation. Id. at 540-41. "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." Id. Most toxic tort cases fit into two categories: "first, those cases in which the medical community generally recognizes the toxicity of the drug or chemical at issue, and second, those cases in which the medical community does not generally recognize the agent as both toxic and causing the injury plaintiff alleges." McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1239 (11th Cir. 2005). Asbestos is grouped in the former.[4] Id. For cases in the first

---

to that asbestos, Plaintiff can no longer offer expert testimony on the issue of causation. Plaintiff points to no other evidence sufficient to establish causation as a matter of law. As such, summary judgment is proper for the additional reason that the exclusion of Plaintiff's experts eliminates any existing issue of material fact as to causation.

[4] Asbestos falls in the first category because the medical community widely accepts that asbestos causes asbestosis and mesothelioma. McClain, 401 F.3d at 1239. It does not appear that the connection between asbestos exposure and ovarian cancer is as concrete. However, as the focal point of this motion for summary judgment is specific causation, the Court need not reach a conclusion on whether the medical community generally accepts that asbestos exposure causes ovarian cancer.

category, specific causation is the only type of causation at issue. Id.

"Specific causation refers to the issue of whether the plaintiff has demonstrated that the substance actually caused injury in her particular case." Chapman v. Procter & Gamble Distrib., LLC, 766 F.3d 1296, 1308 (11th Cir. 2014); McClain, 401 F.3d at 1239 (Specific causation focuses on questions such as: "was plaintiff exposed to the toxin, was plaintiff exposed to enough of the toxin to cause the alleged injury, and did the toxin in fact cause the alleged injury?"). When a plaintiff proceeds against a defendant for an alleged asbestos-related injury, "the threshold for every theory is proof that an injured plaintiff was exposed to asbestos-containing products for which the defendant is responsible." Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1481 (11th Cir. 1985). To ultimately satisfy the specific causation requirement, the plaintiff must show the exposure to the defendant's asbestos was more than de minimis. Scapa Dryer Fabrics, Inc. v. Knight, 788 S.E.2d 421, 425-26 (Ga. 2016) (citing John Crane, Inc. v. Jones, 604 S.E.2d 822, 825 (Ga. 2004)).

To survive summary judgment, Plaintiff must direct the Court to evidence that (1) Ms. Hanson was actually exposed to asbestos in Cashmere Bouquet and (2) the exposure was, under Georgia law, greater than de minimis and a meaningful contributing factor to her diseases. If Defendant shows the absence of evidence on these

10

requirements, Plaintiff must point to evidence that Defendant, as the movant, overlooked or ignored.  Fitzpatrick, 2 F.3d at 1116.

### a. Ms. Hanson's Exposure to Asbestos

It is undisputed that asbestos is not an intended ingredient of Cashmere Bouquet.  (Def.'s Statement of Undisputed Material Facts, Doc. 87-1, ¶ 7 (admitted).)  Therefore, at the outset, this case differs from most occupational exposure cases.  In occupational exposure cases, asbestos is generally a known, common, and uniform ingredient of the defendant's product.  See, e.g., Scapa Dryer, 788 S.E.2d at 423 (some of manufacturer's pipes and boilers were insulated with a material containing asbestos and some manufacturing processes used yarn containing asbestos); Butler, 712 S.E.2d at 539 (detailing plaintiff's exposure to asbestos-containing products).  As a result, to survive summary judgment on specific causation in this case, Plaintiff is first required to put forth evidence that Plaintiff was actually exposed to asbestos present in Cashmere Bouquet.  Plaintiff fails to direct the court to such evidence.

The Parties point to substantial evidence supporting their competing positions regarding the presence of asbestos in talc and talc mines, generally; asbestos in talc mines harvested for the talc used in Cashmere Bouquet, specifically; and tests regarding specific samples of packaged Cashmere Bouquet.  However, to survive summary judgment, Plaintiff needed to point to evidence that she was in proximity to Cashmere Bouquet contaminated with asbestos.

11

See <u>Adamson v. Gen. Elec. Co.</u>, 694 S.E.2d 363, 367 (Ga. Ct. App. 2010) ("To survive summary judgment, the appellant 'needed to present evidence that the manufacturer defendants' asbestos-containing product was used at the location of [plaintiff's] employment and that he was in proximity to that product at the time it was being used.").

As evidence that Ms. Hanson was in the proximity of contaminated Cashmere Bouquet, Plaintiff offers test results and testimony of proffered expert, Dr. Ronald E. Gordon, Ph.D. In his first test of a sample from a Cashmere Bouquet container, Dr. Gordon concluded to a reasonable degree of scientific certainty that the sample did not contain asbestos. (Gordon May 1, 2017 Dep., Doc. 147-23, at 98-100.) Since that time, Dr. Gordon has tested "a little over" fifty containers of Cashmere Bouquet from the 1930s to the 1990s. (Gordon Aff., Doc. 148-38, ¶ 7; Gordon May 1, 2017 Dep. at 100.) Dr. Gordon opines through extrapolation that despite the initial negative test, because all of the over fifty samples he subsequently tested contained asbestos, all containers of Cashmere Bouquet necessarily contain asbestos. (Gordon May 1, 2017 Dep. at 101.)

On the issue of exposure within the overarching element of causation, showing that a small number of samples, at some point, contained the toxic substance does not create a jury issue. As described by the Fifth Circuit:

It does not follow, however, that the delivered talc actually contained asbestos. It is true that a study by Dr. William E. Longo, Ph.D., apparently concluded that [manufacturer's] talc contains [three-percent] asbestos. That study, however, was based on small samples from the [defendant's] plant some time in 1987. There is no evidence that talc containing traces of asbestos in 1987 indicates asbestos in talc delivered several years earlier. To the contrary, asbestos does not appear uniformly in talc. . . . Plaintiffs had, in short, no evidence that [manufacturer's] talc contained asbestos during the years in which plaintiffs allege that they were injured. We hold, therefore, that the district court did not err in awarding summary judgment in favor of [manufacturer].

Slaughter v. S. Talc Co., 949 F.2d 167, 170-71 (5th Cir. 1991).

As in Slaughter, there is no evidence of Ms. Hanson's exposure to the same talc that Dr. Gordon tested. Dr. Gordon confirms that he cannot opine as to the presence of asbestos in Ms. Hanson's Cashmere Bouquet:

> Q: And you have not tested any talcum powder from a container of Cashmere Bouquet that was actually owned or used by Ms. Hanson, correct?
>
> A: Correct.

(Gordon May 1, 2017 Dep. at 15-16.)

> Q: And with respect to the three particles found in the lung tissue and the one particle found in the ovarian tissue, you're not able to say to a reasonable degree of scientific certainty that it originated in the Cashmere Bouquet talcum powder, correct?
>
> A: Well —
>
> Q: You can't say that?
>
> A: I can't — I can't prove that it came directly from a Cashmere Bouquet container.

(Id. at 53.)

13

Q: You never tested any talcum powder that was personally used by Mrs. Hanson for asbestos contamination, correct?

A: Correct.

(Id. at 55.)

Q: Dr. Gordon, you've testified on multiple occasions under oath that you can only testify to a reasonable degree of scientific certainty about the contents of Cashmere Bouquet containers that you actually tested, correct?

A: Correct.

(Id. at 99.)

Q: For now, though, sir, can we agree that you cannot opine, to a reasonable degree of scientific certainty, about the contents of any talcum powder you did not personally test or personally review test data?

A: I can't.

(Daubert Hr'g, Jackson v. Colgate-Palmolive Co., No. 15-01066 (TFH) (D.D.C. Feb. 13, 2017), Doc. 61-7, at 129 (excerpts).)

The fifty-plus samples that Dr. Gordon tested are insufficient to create a fact issue as to actual exposure, the threshold issue for an asbestos exposure action. Blackston, 764 F.2d at 1481. Under Georgia law, without evidence that a plaintiff is exposed to asbestos, a tort claim premised on asbestos exposure cannot succeed as a matter of law.

In Hoffman v. AC&S, Inc., the court affirmed summary judgment in favor of two defendants because the plaintiff failed to present evidence that asbestos-containing products were in the shipyard at the same time as plaintiff. 548 S.E.2d 379, 383-84 (Ga. Ct. App. 2001). A witness testified that a certain brand of insulation and

insulating cement were used in the shipyard at some point. Id. at 383. The witness, however, could not state when the asbestos-containing products were in the shipyard. Id. Therefore, there was no evidence creating a genuine issue of material fact regarding whether the asbestos-containing product was in the shipyard concurrently with the plaintiff. Id. The Georgia Court of Appeals determined, "To infer from this testimony that . . . asbestos products were used at the shipyard during [plaintiff's] three-month span . . . would be sheer speculation." Id. ("Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.") (internal citation omitted).

Plaintiff's allegation that Ms. Hanson was exposed to Cashmere Bouquet containing asbestos is analogous to Hoffman. First, through the testimony and reports of Plaintiff's experts, Plaintiff can show that some containers of Cashmere Bouquet contain asbestos. However, as in Hoffman, Plaintiff is unable to point to evidence showing that Ms. Hanson was exposed to containers of Cashmere Bouquet that did, in fact, contain asbestos. Accepting as true that Ms. Hanson used Cashmere Bouquet regularly from 1961 to 1973 does not change the analysis. Plaintiff does not point to evidence that in Dr. Gordon's test of approximately fifty samples of Cashmere Bouquet representing approximately sixty years of Cashmere Bouquet production, any of the samples represented the twelve-year window that Ms. Hanson used the product. Even if Dr.

15

Gordon's test did sample Cashmere Bouquet manufactured during the twelve-year period of Ms. Hanson's use, there is no evidence that he tested a sample that Ms. Hanson actually used.

If the Court were to accept Plaintiff's position that some contamination is evidence that Ms. Hanson was exposed to asbestos, the Court would allow a jury to find a defendant liable exclusively on the following reasoning: (1) a product sometimes contains asbestos; (2) plaintiff used the product in question; (3) asbestos causes mesothelioma; (4) plaintiff contracted mesothelioma; and (5) therefore, the product caused plaintiff's mesothelioma. This reasoning, however, bypasses the established rule in Georgia that a plaintiff show actual exposure to satisfy the specific causation requirement. Instead, the reasoning permits the jury to find liability on an assumption of exposure and the general cause and effect relationship between asbestos exposure and mesothelioma.[5]

For this reason, courts grant summary judgment when a plaintiff alleges a product caused an exposure-related illness by showing only that the product sometimes contains the toxin at issue. See, e.g., Lindstrom v. A-C Prod. Liab. Tr., 424 F.3d 488,

---

[5] McClain cautioned against confusing a temporal relationship with causation. 401 F.3d at 1243 ("[P]roving a *temporal* relationship . . . does not establish a *causal* relationship. In other words, simply because a person takes drugs and then suffers an injury does not show causation. Drawing such a conclusion from temporal relationships leads to the blunder of the *post hoc ergo propter hoc* fallacy. The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence. It literally means, "after this, because of this.") (citing *Post Hoc Ergo Propter Hoc*, BLACK'S LAW DICTIONARY (7th ed. 1999)).

497-98 (6th Cir. 2005); Hoffman, 548 S.E.2d at 384 (finding that evidence of proximity to a product that routinely contains asbestos is insufficient to survive summary judgment on the threshold requirement of exposure). The opposite conclusion would effectively create a presumption that showing a product sometimes contains asbestos is sufficient to establish actual exposure to asbestos. The Eleventh Circuit has rejected similar invitations to create presumptions involving asbestos exposure in the past. See Blackston, 764 F.2d at 1484 (refusing to create judicial presumption that exposure exists when an asbestos-containing product and plaintiff were simultaneously at a place of employment).

In conclusion, Defendant met its initial summary judgment burden to show no genuine issue of material fact as to Ms. Hanson's asbestos exposure. In response, Plaintiff failed to present evidence of such an exposure in the Cashmere Bouquet she used. Finding that Ms. Hanson was exposed to asbestos in her Cashmere Bouquet would require the jury to speculate that because some containers of Cashmere Bouquet contain asbestos, Ms. Hanson's containers of Cashmere Bouquet contained asbestos. This type of speculation does not create a genuine issue of material fact. Hoffman, 548 S.E.2d at 383-84.

### b. Ms. Hanson's Level of Exposure

Even if Dr. Gordon's study qualified as evidence that Ms. Hanson suffered exposure to asbestos through Cashmere Bouquet,

17

Defendant has shown that there is no evidence regarding the level of that exposure and the contribution of Ms. Hanson's Cashmere Bouquet to her mesothelioma and ovarian cancer. Plaintiff fails to demonstrate evidence refuting Defendant's contention concerning Plaintiff's lack of evidence. Georgia rejects the notion that showing a plaintiff experienced any exposure to asbestos greater than naturally occurring background levels is sufficient to establish proximate cause. Scapa Dryer, 788 S.E.2d at 425-26. Yet, Plaintiff, in brief, relies on the theory that any exposure above background causes asbestos-related diseases. (Pls.' Br. in Opp'n to Mot. for Summ. J., at 18-19.)

Plaintiff cites several studies, including two government studies, for the proposition that any above background exposure is sufficient to cause asbestos-related disease: (1) "Because asbestos fibers remain in the body, each exposure increases the likelihood of developing an asbestos-related disease;" (2) "Researchers have concluded that there is no threshold below which there is no risk from exposure to asbestos;" and (3) "Asbestos exposures as short as [sic] in duration as a few days have caused mesothelioma in humans. Every occupational exposure to asbestos can cause injury of disease; every occupational exposure to asbestos contributes to the risk of getting an asbestos-related disease." (Id.) (citations omitted). Regardless of the validity of these studies, Georgia's rejection of the "any exposure above background" causation theory solidifies that these studies do not

constitute evidence or provide the standard for proving legal causation. Moreover, the Eleventh Circuit has distinguished governmental agency risk analysis from legal causation. See McClain, 401 F.3d at 1249 (distinguishing governmental cost-benefit and risk analysis from legal causation).

Although Scapa Dryer assessed admissibility of expert testimony, the Court excluded plaintiff's expert by reasoning that pointing to any asbestos exposure does not prove that the asbestos caused the injury in question. 788 S.E.2d 421. In Scapa Dryer, plaintiff's expert testified that each exposure above background levels contributed to plaintiff's mesothelioma regardless of the extent of each exposure. Id. at 424. Excluding plaintiff's expert on relevance grounds, the Georgia Supreme Court determined that merely testifying that any exposure to asbestos above background levels caused an asbestos-related disease did not assist the jury with its task in determining legal causation: whether the exposure was more than de minimis and at a level sufficient to cause the disease.[6] Id. at 426—27. Following Scapa Dryer, if a de minimis exposure to asbestos will not support the jury finding the exposure

---

[6] Plaintiff acknowledges that the level of proof for the ovarian cancer is higher than for mesothelioma. Plaintiff states that while mesothelioma requires proof that the asbestos exposure was a "meaningful" factor, ovarian cancer requires a showing that the asbestos exposure was a "substantial" factor. (Pls.' Br. in Opp'n to Mot. for Summ. J., at 24.) Because the burden on causation for ovarian cancer is higher, Plaintiff's failure to create a genuine issue of material fact as to the cause of Ms. Hanson's mesothelioma demands a finding that there is no genuine issue of material fact as to the causation of her ovarian cancer.

caused the asbestos-related disease, then the plaintiff must show, as a matter of law, an exposure greater than de minimis.

As Plaintiff offers no evidence that Ms. Hanson was exposed to asbestos through her use of Cashmere Bouquet, Plaintiff faces an even more difficult task of pointing to evidence that her containers of Cashmere Bouquet exposed her to asbestos at sufficient levels to cause her mesothelioma. In an attempt to direct the Court to such evidence, Plaintiff relies on studies of Dr. Gordon and additional medical expert testimony. However, none of the proffered experts offer evidence that Ms. Hanson's specific exposure was sufficient to cause her cancer. Instead, Plaintiff's experts (1) discuss asbestos exposure levels that users of Cashmere Bouquet may have experienced, generally; and (2) state that because Plaintiff contracted mesothelioma, her exposure to asbestos in Cashmere Bouquet was necessarily above background levels. Dr. Gordon's study regarding exposure levels to asbestos in Cashmere Bouquet, like his studies on the existence of asbestos in Cashmere Bouquet, tested random samples. (Docs. 151-6, 151-7, 151-8, 151-9, 151-10, 151-11, 151-12, 151-13.) As discussed *supra*, he cannot offer an opinion as to Ms. Hanson's exposure because he did not test the samples that she used. Dr. Gordon testified to such in this case and others in which he offered expert opinions:

> Q: If your lab does a digestion study and finds one anthophyllite fiber, is that automatically above background?
>
> A: Yes, if it's five microns or greater in length.

(Gordon May 1, 2017 Dep. at 65—66.)

> Q: You have no evidence that Ms. Jackson actually used a contaminated container of talcum power; do you?
>
> A: I don't. But it has always been my assessment, based on finding it in all the containers that I have actually looked at, to extrapolate that it should be in all of them. To what degree, I don't know.

(Daubert Hr'g, Jackson v. Colgate-Palmolive Co., No. 15-01066

(TFH) (D.D.C. Feb. 13, 2017), Doc. 61-7, at 128—29.)

> Q: You have not performed any type of exposure assessment, you're not going to be offering any opinions of exposure assessment of Mrs. Hanson, correct?
>
> A: No.

(Gordon May 1, 2017 Dep. at 44.)

> Q: Because the mineral particles you found in Ms. Jackson's tissue cannot be demonstrated to a reasonable degree of scientific certainty they came from Cashmere Bouquet talcum powder, you would be asking this jury to speculate that the fibers that you found in tissue can be correlated with the fibers that you found in a product; correct?
>
> A: Yes.

(Daubert Hr'g, Jackson v. Colgate-Palmolive Co., No. 15-01066

(TFH) (D.D.C. Feb. 13, 2017), Doc. 67-4, at 100 (excerpts).) Dr.

Gordon's testimony confirms that his studies are insufficient to

establish causation under Georgia law. He is unable to opine

regarding the level of Ms. Hanson's exposure and assumes above

background exposure upon discovering asbestos in his digestion

studies. Without deciding the reliability of the opinion under

*Daubert*, his opinions do not create an issue of fact as to causation.

The opinions of Plaintiff's medical expert on specific causation also fail to create a genuine issue of material fact. In his expert report, Dr. Kradin states, "When it comes to the disease mesothelioma, no occupational exposure can scientifically be discounted or considered irrelevant — all occupational, domestic and para-occupational exposures, which by definition are above background, cause the disease." (Kradin Expert Report, Doc. 119-5, at 4.) He continues, "There is no level of asbestos exposure above background levels that has been shown to not contribute to causing mesothelioma. It is generally accepted in the medical and scientific community that all levels of asbestos exposure above background levels contribute to causing mesothelioma." (Id. at 12.) Finally, Dr. Kradin confirms that his opinion is that any exposure above background is a substantial cause of mesothelioma:

> If a person sustains asbestos exposures above background/ambient levels of exposure as reflected by an occupational, para-occupational and/or domestic asbestos exposure and goes on to develop mesothelioma, it is my opinion that the exposures above background levels, taken in context of the individual's total (cumulative) asbestos exposures, are significant and non-trivial, and are medical and scientific causes in the development of the individual's mesothelioma. In the legal context, such asbestos exposures are often described or classified as 'substantial contributing factors' or 'contributing causes' or 'significant factors' to the development of the individual's mesothelioma. It is not my opinion that a 'single fiber,' or that 'each and every' or 'any' exposure to

asbestos, even those below background levels, are a substantial contributing factor in causing mesothelioma.

(Id.) When his report is broken down to its foundation, Dr. Kradin opines that "each and every" or "any" exposure above background is a substantial contributing factor to the contraction of mesothelioma, and, therefore, that any above background exposure to asbestos in Cashmere Bouquet caused Ms. Hanson's mesothelioma. Scapa Dryer determined causation requires a showing more than what Dr. Kradin offers because Dr. Kradin's opinion does not meet the "de minimis" causation requirement:

> According to [plaintiff's expert], the precise point at which cumulative exposure is sufficient to cause any particular person to develop mesothelioma is not scientifically knowable, and for that reason, when a person actually has mesothelioma, it can only be attributed to his cumulative exposure as a whole. Because each and every exposure to respirable asbestos in excess of the background contributes to the cumulative exposure, [plaintiff's expert] reasoned, each and every exposure in excess of the background is a contributing cause of the resulting mesothelioma, regardless of the extent of each exposure. . . . But by his testimony, [plaintiff's expert] essentially told the jury that it was unnecessary to resolve the extent of exposure . . . if the jury determined that plaintiff was exposed at the facility to *any* asbestos beyond background, that exposure contributed to his cumulative exposure, and according to [plaintiff's expert], it was, therefore, a contributing cause of the mesothelioma.

788 S.E.2d at 423-24, 426 (emphasis in original). Additionally, Dr. Kradin relied on the aforementioned studies of Dr. Gordon,

and, therefore, is unable to express an opinion as to Ms. Hanson's specific level of exposure.[7]

In essence, Defendant shows that Plaintiff offers no evidence establishing Ms. Hanson's specific level of exposure from Cashmere Bouquet was greater than de minimis. Plaintiff fails to rebut. Both of Plaintiff's experts (1) assume the presence of asbestos in Ms. Hanson's Cashmere Bouquet and (2) assume the quantity of asbestos in Ms. Hanson's Cashmere Bouquet was sufficient to cause

---

[7] Dr. Kradin acknowledged Ms. Hanson's exposure levels cannot be established:

Q: And you would have no way of determining the percentage of powder in a container of Cashmere Bouquet that was actually used by Ms. Hanson. Correct?

A: No. I can only give you the type of description that she gives in her deposition for how often and with what frequency, duration that she used this type of talcum powder.

Q: Okay. And in order to attribute that Ms. Hanson's use of Cashmere Bouquet was substantial, we would need to establish that it was above ambient levels. Correct?

   . . .

A: Again I — I can't imagine that it would not be above ambient levels.

   . . .

A: — I wanted to clarify my answer as well because I think the question was put to me as to whether or not I would to — it would need to be established that Mrs. Hanson's exposures were above background. I think there would be no way at this point to establish in real time what her exposures were, and so we would have to rely upon simulations such as what was put forth — in the Gordon study.

(Kradin Dep., Doc. 148-59, at 48-50.)

her mesothelioma. In Georgia, the specific causation requirements demand evidence of a level of exposure sufficient to cause the disease in question, not an assumption of exposure. Without any evidence on the essential element of specific causation, Plaintiff's claims related to Ms. Hanson's alleged asbestos-exposure necessarily fail.

### 2. Punitive Damages

Defendant filed a motion for partial summary judgment as to Plaintiff's claim for punitive damages. (Doc. 74.) Because a claim for punitive damages is derivative of a plaintiff's tort claim, a claim for punitive damages cannot survive absent the underlying tort claim. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1304-05 (11th Cir. 2009) ("Because the court has concluded that [defendants] are entitled to summary judgment with respect to all the [plaintiff's] substantive claims, the claim for punitive damages cannot survive."). Defendant is entitled to summary judgment on Plaintiff's tort claims. Accordingly, summary judgment is required as to Plaintiff's claim for punitive damages as a matter of law.


### IV. CONCLUSION

Based on the foregoing, it **IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 87) is **GRANTED**, Defendant's motion for partial summary judgment (Doc. 74) is **GRANTED**, and Defendant's motion for oral argument on its summary judgment

motions (Doc. 129) is **DENIED**.  Accordingly, the Clerk is directed

to **ENTER JUDGMENT** in favor of Defendant on all of Plaintiff's

claims, **TERMINATE** all other pending motions, if any, and **CLOSE**

this case.

    **ORDER  ENTERED**  at  Augusta,  Georgia,  this  28th  day  of

September, 2018.

_____
J.  RANDAL  HALL,  CHIEF  JUDGE
UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  GEORGIA